## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

RANDALL SMITH,                                        CIVIL NO. 06-CV-2091  (ADM/AJB)

           PLAINTIFF,

V.                                                   **REPORT AND RECOMMENDATION ON THE**
                                                     **PARTIES' CROSS MOTIONS**
                                                     **FOR SUMMARY JUDGMENT**

MICHAEL J. ASTRUE, COMMISSIONER OF
THE SOCIAL SECURITY ADMINISTRATION,

           DEFENDANT.

---

Jennifer G. Mrozik, Esq., for Plaintiff, Randall Smith.

Rachel K. Paulose, United States Attorney and Lonnie F. Bryan, Assistant United States
Attorney, for Defendant, the Commissioner of the Social Security Administration

---

### INTRODUCTION

      Plaintiff Randall Smith ("Plaintiff") disputes the unfavorable decision of the

Commissioner of the Social Security Agency ("Commissioner") denying his claim for a period

of disability and disability insurance benefits under Title II of the Social Security Act.  This

matter is before the court, United States Magistrate Judge Arthur J. Boylan, for a report and

recommendation to the District Court on the parties' cross motions for summary judgment.  *See*

28 U.S.C. § 636 (b)(1) and Local Rule 72.1.  Based on the reasoning set forth below, this Court

**recommends** that Plaintiff's Motion for Summary Judgment [Docket No. 5] **be granted** and that

the Commissioner's Motion for Summary Judgment [Docket No. 17] **be denied**.  The Court

**recommends** that that this case be remanded to the Commissioner for **an award of benefits.**

## ISSUES BEFORE THE COURT

The primary issues before the Court are (1) whether Administrative Law Judge ("ALJ") Mary M. Kunz failed to follow the remand Order of the District Court and (2) whether the ALJ abused her discretion by conducting a *de novo* hearing despite the specific remand Order of the District Court.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") in August 1991, but the state agency denied his application and he did not seek further review.  Plaintiff subsequently filed for DIB in November 1992.  This Court affirmed the Agency's decision that Plaintiff was not disabled for purposes of DIB at any time prior to February 10, 1994.  Plaintiff's date of last insured for DIB was September 30, 1995.  Thus, this Court's review is limited to the time period of February 11, 1994 through September 30, 1995.

Plaintiff filed an application for DIB on March 12, 1997, with an amended onset date of disability of February 11, 1994.  (Tr. 501-03).  The state agency denied Plaintiff's claim initially and on reconsideration.  Plaintiff made a timely request for a hearing before an ALJ.

On September 16, 1998, ALJ David B. Washington conducted an administrative hearing regarding Plaintiff's application for DIB.  On October 15, 1998, ALJ Washington denied Plaintiff's application for benefits.  On December 15, 1998, Plaintiff filed a request for review to the Appeals Council.  On June 9, 2000, the Appeals Council denied review, making ALJ Washington's decision the final decision of the Commissioner.  Plaintiff appealed to this Court, but the Commissioner requested that the case be remanded because the Commissioner lost the cassette tape of the hearing before the ALJ.  On June 7, 2001, the District Court remanded Plaintiff's case to the Commissioner.  (Tr. 491-92).

On October 26, 2001, Plaintiff testified before ALJ David B. Washington.  Dr. Andrew Steiner testified as the government appointed medical expert and Steven Bosch testified as the government appointed vocational expert.  On December 5, 2001, ALJ Washington denied Plaintiff's application for benefits.  Thereafter, Plaintiff requested an appeal, but the Appeals Council denied Plaintiff's request on February 11, 2002.

On August 26, 2002, Plaintiff sought review from this Court.  Both parties filed motions for summary judgment.  On January 9, 2003, United States Magistrate Judge Susan Richard Nelson recommended that Plaintiff's case be remanded for further proceedings consistent with her opinion.  (Tr. 917-18).  On April 9, 2003, United States District Court Judge Michael J. Davis adopted Magistrate Judge Nelson's recommendation and issued an Order remanding the matter for further proceedings consistent with Magistrate Judge Nelson's opinion.  (Tr. 891-92).

On remand, ALJ Mary M. Kunz scheduled a *de novo* hearing for November 3, 2003.  (Tr. 778, 804-820).  However, ALJ Kunz rescheduled the hearing to February 24, 2004, to allow the government appointed medical and vocational experts to review this Court's remand Order and the transcript from the October 26, 2001 hearing.  (Tr. 778, 818).  However, the hearing scheduled for February 24, 2004 was postponed because Plaintiff's attorney sought clarification from the Appeals Council as to whether ALJ Kunz should conduct a *de novo* hearing or a supplemental hearing limited to the specific issues addressed by this Court.  (Tr. 778, 1036, 1041-42).  The Appeals Council informed Plaintiff's attorney that ALJ Kunz had discretion on how to proceed on remand.  (Tr. 1045).

On May 27, 2004, ALJ Kunz conducted a *de novo* hearing.  Dr. Andrew Steiner testified again as the government appointed medical expert and Steven Bosch testified again as the government appointed vocational expert.

On July 26, 2004, ALJ Kunz denied benefits to Plaintiff.  (Tr. 794).   On August 25, 2004, Plaintiff filed a request for review to the Appeals Council.  (Tr. 757-71).  On April 5, 2006, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 749-50).  On May 19, 2006, Plaintiff filed an action in this Court to reopen the matter.  Both parties filed motions for summary judgment.

## FACTUAL BACKGROUND

Plaintiff was born in 1952.  (Tr. 501).  He has a ninth grade education and previously worked as a maintenance mechanic, truck driver, heavy equipment operator, and pesticide operator.  (Tr. 370, 581, 585).  This Court's review is limited to the time period between February 11, 1994 and September 30, 1995.

## TESTIMONY AT THE ADMINISTRATIVE HEARING ON OCTOBER 26, 2001

### Plaintiff's Relevant Testimony at the October 26, 2001 Hearing

Plaintiff testified that he suffers from asthma and breathing difficulties.  (Tr. 372, 385-87).   Plaintiff indicated that between February 11, 1994 and September 30, 1995 ("relevant time period") he spent considerable time in the emergency room and was hospitalized in July 1994.  (Tr. 378-79).  Plaintiff explained that he used a nebulizer[1] approximately three to four hours a day during the relevant time period.  (Tr. 387).  Plaintiff stated that his treating physician, Dr. Donald D. Blowers, prescribed the nebulizer.  (Tr. 387-88).  Furthermore, Plaintiff testified that he was taking Prednisone[2] for treatment of his asthma. (Tr. 388-89).

---

[1] A nebulizer is "[a] device used to reduce liquid medication to extremely fine cloudlike particles; useful in delivering medication to deeper parts of the respiratory tract."  *Stedmans Medical Dictionary* (27th ed. 2000)

[2] Prednisone "is a steroid drug used to reduce inflammation and alleviate symptoms in a variety of disorders, including . . . severe cases of asthma."  *The PDR Family Guide to Prescription Drugs*, Three Rivers Press (8th ed. 2000).

*Dr. Steiner's Relevant Testimony at the October 26, 2001 Hearing*

Dr. Steiner testified that Plaintiff underwent treatment for obstructive pulmonary disease and asthma.  (Tr. 392).  Dr. Steiner also testified that Plaintiff should avoid exposure to temperature extremes, dusts, gases, fumes, and perfumes. (Tr. 393-94).  Finally, Dr. Steiner testified that Plaintiff's condition requires the type of medications he is taking, including a nebulizer machine.  (Tr. 403).

*Vocational Expert's Relevant Testimony at the October 26, 2001 Hearing*

Steven Bosch, vocational expert, testified that Plaintiff could not perform any of his past work based on ALJ Washington's hypothetical.  The vocational expert ("VE") also testified that there were approximately 10,000 assembly jobs, 4,000 packaging jobs, and 1,500 to 2,000 security guard jobs available in which Plaintiff could perform.  However, the VE testified that the packaging and assembly jobs might not be appropriate for Plaintiff if they involved significant exposure to cardboard boxes or dust.  (Tr. 411).  Furthermore, the VE could not testify as to a statistical breakdown of how many clean room jobs existed within the available assembly or packaging jobs.  (Tr. 412-13).  Also, the VE could not testify as to a statistical breakdown on how many of the security jobs required the individual to make security rounds outside.  (Tr. 415).

Notably, the VE testified that if Plaintiff "needs to leave the workplace [during the workday] to use the nebulizer for . . . two to four hours, then that would preclude competitive employment."  (Tr. 417).  The VE also testified that he did not know whether other jobs would exist if Plaintiff needed to use the nebulizer "on an as-needed basis."  (Tr. 417).

**REMAND ORDER FROM DISTRICT COURT**

This Court found that the record was "entirely unclear as to whether Plaintiff can perform any work in the national or regional economy." (Tr. 913). Dr. Steiner testified that Plaintiff needs to use a nebulizer machine, but Steven Bosch, VE, testified that he did not know if Plaintiff could perform any work if Plaintiff needs to use a nebulizer machine "on an as-needed basis." (Tr. 417, 913). This Court found that "[t]he ALJ should have included the use of the nebulizer as a limitation in his hypothetical." (Tr. 913). Thus, the Court concluded that the Commissioner failed to carry its burden as to whether Plaintiff could perform any of the jobs cited by the vocational expert.

The Court found that the medical evidence available demonstrates that Plaintiff needs the nebulizer on an as-needed basis. (Tr. 913). The Court indicated that remand was required to determine whether any jobs exist in such a situation. (Tr. 915).

The Court limited its remand Order to the following issues:

 (1) whether Plaintiff can perform any jobs if he needs to use a nebulizer machine on an as-needed basis; (2) how many packaging jobs are available in an environment free from dusts, pollutants, gases, perfumes, and the like (a clean room environment); (3) how many assembling jobs are available in an environment free from dusts, pollutants, gases, perfumes, and the like (a clean room environment); (4) must Plaintiff avoid temperature extremes to such a degree that he cannot work as a security guard that requires occasional work/rounds outside; (5) if the answer to issue 4 is yes, then how many security jobs exist that do not require outside work/rounds; (6) if there are any other jobs that the Plaintiff may be able to perform given his limitations. The paramount issue is whether Plaintiff can perform any jobs if he  needs to use a nebulizer machine on an as-needed basis because if Plaintiff cannot, then the other issues are moot.

(Tr. 917).

**_DE NOVO_ HEARING CONDUCTED BY ALJ**

*Dr. Blowers' Opinion on Plaintiff's Use of the Nebulizer*

On February 9, 2004, Plaintiff's treating physician, Dr. Blowers, indicated that Plaintiff's use of a nebulizer is medically necessary for his asthma treatment.  (Tr. 1150).  Dr. Blowers explained that when Plaintiff uses the nebulizer on an as-needed basis, he should use it about six times daily because of his susceptibility to both viral respiratory infections and common allergic triggers.  (Tr. 1151).

On May 27, 2004, ALJ Mary M. Kunz conducted a *de novo* hearing.  Plaintiff testified at the *de novo* hearing.  Also, Dr. Andrew Steiner testified again as the government appointed medical expert and Steven Bosch testified again as the government appointed vocational expert.

*Plaintiff's Relevant Testimony at the De Novo Hearing*

Plaintiff testified that he has difficulty breathing when there are environmental changes.  (Tr. 850-51).  Plaintiff stated that he needs a nebulizer and rescue inhalers to control his asthma.  (Tr. 851-52).  Plaintiff testified that the process of using the nebulizer takes approximately 45 to 60 minutes each time he uses it.  (Tr. 856).  Plaintiff also indicated that Dr. Blowers would allow him to use the nebulizer up to six times a day.  (Tr. 855).

*Dr. Steiner's Relevant Testimony at the De Novo Hearing*

Dr. Steiner testified that Plaintiff should have no exposure to cat dander, ragweed, and high concentrations of household dust/dust mites.  (Tr. 829).  Furthermore, Dr. Steiner indicated that Plaintiff should have no exposure to temperature extremes, heavy concentrations of fumes, gasses, smoke, or high levels of moisture.  (Tr. 829).

Dr. Steiner also testified that the hospital administered a nebulizer to Plaintiff.  (Tr. 830).  Dr. Steiner indicated that the record showed documentation of Plaintiff's use of inhalers.  (Tr.

831).  Dr. Steiner also testified that Plaintiff received nebulizer treatments when he went to the

emergency room and at home.  (Tr. 830-31).  Dr. Steiner acknowledged that Plaintiff received

nebulizer treatments at certain time periods.  (Tr. 865).  However, Dr. Steiner testified that the

record for the relevant time period contained very little evidence that Plaintiff used a nebulizer

on a regular basis.  (Tr. 831, 866).

### Vocational Expert's Relevant Testimony at the De Novo Hearing

Steven Bosch testified as the government appointed vocational expert.  The VE testified

that Plaintiff could not perform any of his past work based on the ALJ's hypothetical.  (Tr. 872).

The VE stated that Plaintiff could perform the jobs of a security monitor (1,500 jobs available),

assorting occupations (2,000 jobs available), optical assembly (1,000 to 1,200 jobs available),

and electronic or medical assembly positions (3,000 jobs available).  (Tr. 872-73).  The VE also

testified that there were 4,000 clean room medical assembly type jobs with no exposure to

pollutants, gases, perfumes, and other similar airborne particulates.

However, the VE testified that "competitive employment would not be possible" if

Plaintiff has to use a nebulizer at unscheduled times (three to four times a day and process

taking 45 to 60 minutes during each use).  (Tr. 874).

## THE ALJ'S FINDINGS AND DECISION

On June 26, 2004, ALJ Kunz issued her decision denying Plaintiff's application for DIB.

The ALJ followed the sequential five-step procedure as set out in the rules.[3]  *See* 20 C.F.R. §

416.920; *Fines v. Apfel*, 149 F.3d 893, 894-95 (8th Cir. 1998).

---

[3] Although this Court issued a specific remand Order, the ALJ re-examined the record
and provided a full five-step analysis. (Tr. 779-796).  The Court's discussion of the ALJ's
decision is limited to the portions that are relevant to the remand Order.

The ALJ concluded that Plaintiff could not perform his past relevant work.  (Tr. 795-96).  However, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers such as security monitor, sorter, optical assembler, electronics assembler, and medical assembler.  (Tr. 796).  The ALJ gave little weight to Dr. Blowers' opinion that Plaintiff's use of a nebulizer is medically necessary for his asthma treatment.  (Tr. 787).  Instead, the ALJ relied on Dr. Steiner's testimony that the record contained very little evidence that Plaintiff needed to use a nebulizer on a regular basis.  (Tr. 785).  The ALJ acknowledged that Dr. Steiner's testimony from the 2001 hearing was different from the testimony he gave at the 2004 hearing.  Nonetheless, the ALJ concluded that that it was not clear what time period Dr. Steiner was referring to when he testified that Plaintiff needed to use a nebulizer on an as-needed basis.  As such, the ALJ disregarded the VE's testimony that competitive employment would be precluded if Plaintiff needed to use a nebulizer at unscheduled times.  (Tr. 874).  Accordingly, ALJ Kunz found that Plaintiff was not disabled under the regulations imposed by the Social Security Act.  (Tr. 796).

## DISCUSSION

Plaintiff argues that this Court should reverse the ALJ's unfavorable decision for two primary reasons. [4]  First, Plaintiff asserts that Dr. Steiner's testimony is inconsistent.  Next, Plaintiff argues that the ALJ failed to follow the remand Order of this Court.

---

[4] Plaintiff also argues that an ex parte communication took place between the Office of Disability Adjudication and Review and the VE.  Plaintiff alleges that his attorney found a note attached to the front of the file directing the VE to review Dr. Steiner's opinion that a nebulizer was necessary.  The Court reminds the ALJ that "[a]ll ALJ contact with a VE about a case must be in writing or at an open hearing, and all correspondence with the VE must be made part of the record."  Hallex I-2-5-52.

**Standard of Review**

The Court's review is limited to a determination of whether the ALJ's decision is supported by "substantial evidence" in the record as a whole. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).

Notably, this Court is in the best position to determine whether an ALJ violated its mandate on remand. *Steahr v. Apfel*, 151 F.3d 1124, 1125-26 (8th Cir. 1998). Indeed, the United States Supreme Court has recognized that an ALJ is not in a position to disregard an order from the District Court on remand. "*Deviation from the court's remand order* in the subsequent administrative proceedings *is itself legal error, subject to reversal* on further judicial review." *Sullivan v. Hudson,* 490 U.S. 877, 886 (1989) (emphasis added; internal citations omitted).

**Remand Order Was Specific and Limited**

The instructions of this Court's remand Order were very clear. The Court emphasized that "[t]he paramount issue is whether Plaintiff can perform any jobs if he needs to use a nebulizer machine on an as-needed basis because if Plaintiff cannot, then the other issues are moot." (Tr. 917). Notably, this Court found that "[t]he ALJ should have included the use of a nebulizer as a limitation in his hypothetical." (Tr. 913). The Court found that the medical evidence available demonstrates that Plaintiff needs the nebulizer on an as-needed basis. (Tr. 915). Indeed, Dr. Steiner opined that Plaintiff needs the nebulizer. However, the VE testified that he did not know if Plaintiff could work if he uses a nebulizer on an as-needed basis. Thus, this Court's remand Order was limited to a determination of whether any jobs exist in such a situation.

**Dr. Steiner's Testimony at the *De Novo* Hearing is Irrelevant and Not Credible.**

First, the Court already found that Plaintiff requires the nebulizer on an as-needed basis. (Tr. 913, 915).  "The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy." *United States v. Bartsh,* 69 F.3d 864, 866 (8th Cir.1995) (citation omitted).  "The 'law of the case' doctrine also applies to administrative agencies on remand." *Brachtel v. Apfel,* 132 F.3d 417, 419-20 (8th Cir. 1997).  However, this doctrine does not apply if "a party introduces substantially different evidence, or the prior decision is clearly erroneous and works a manifest injustice." *Bartsh,* 69 F.3d at 866 (quoting *United States v. Callaway,* 972 F.2d 904, 905 (8th Cir.1992) (per curiam)).

Defendant argues that the ALJ did not violate the "law of the case" doctrine because Dr. Steiner's testimony constituted "substantially different evidence."  Defendant tries to avoid the this Court's specific and limited remand Order by arguing that it was not clear what time period Dr. Steiner was referring to when he testified that Plaintiff needs to use a nebulizer on an as-needed basis.  Defendant asserts that Dr. Steiner's testimony at the *de novo* hearing covered the relevant time period and therefore the ALJ appropriately considered this substantially different evidence.  However, Defendant's argument fails because there are multiple references to the relevant time period throughout the hearing on October 26, 2001.  Thus, Dr. Steiner was fully aware of the time period for which he testified.  (Tr. 377, 385, 387).

Notably, Plaintiff testified at the 2001 hearing that he used the nebulizer *between February of 1994 and September of 1995* every three to four hours.  (Tr. 387) (emphasis added). The ALJ reminded Dr. Steiner of the relevant time period before asking him questions.  (Tr.

392).  Thereafter, Dr. Steiner testified that Plaintiff needs the kinds of medications he is taking and the nebulizer.  (Tr. 403).  Thus, Defendant's argument is without merit.

Dr. Steiner's testimony at the *de novo* hearing is also not credible.  Dr. Steiner originally testified that Plaintiff uses the nebulizer on as-needed basis.  Thereafter, Dr. Steiner testified that the record for the relevant time period contained very little evidence that Plaintiff uses a nebulizer on a regular basis.  Dr. Steiner's testimony is simply not credible because he relied on the same medical evidence in both hearings.  Furthermore, Dr. Blowers, who has treated Plaintiff for over twenty years, opined that Plaintiff's use of a nebulizer is medically necessary for his asthma treatment.  *See Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) ("A treating physician's opinion is due controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.") (internal quotations and citations omitted).

## The ALJ Should Not Have Conducted a *De Novo* Hearing

This Court's remand Order was limited to a determination of whether Plaintiff can perform any jobs when he is subject to the limitation of using a nebulizer on an as-needed basis. Nonetheless, the ALJ ignored the remand Order by conducting a *de novo* hearing.  "Nothing in the order of remand even remotely suggest[ed] that granting [P]laintiff's motion in this limited regard concurrently gave the ALJ leave to conduct *de novo* proceedings."  *Holst v. Bowen,* 637 F.Supp. 145, 145, n.1 (E.D.Wash. 1986).  Despite this Court's specific and limited remand Order, the ALJ conducted a new hearing as if this Court's remand Order did not exist.

Defendant argues "that it is not clear that the District Court made a specific finding of fact with respect to Plaintiff's use of a nebulizer."  [Docket No. 18].  To the contrary, Magistrate Judge Nelson opined that this case was similar to *Eback v. Chater*, 94 F.3d 410, 412-13 (8th Cir.

1996) in which the Eighth Circuit held that competitive employment was precluded for a claimant who had to use a nebulizer everyday even though the VE testified that jobs would be available if an employer made an accommodation.

Here, this Court found that "the only medical evidence available demonstrates that Plaintiff needs the nebulizer on an as-needed basis." (Tr. 915). The Court concluded that "[t]he ALJ should have included the use of a nebulizer as a limitation in his hypothetical." (Tr. 913).

Furthermore, this Court's remand Order was not general in nature, but was very specific and limited. Indeed, the ALJ acknowledged "the *specific concerns of the District Court*" in a letter to Plaintiff's attorney and made reference to the limited scope of the remand Order in her decision. (Tr. 1041, 794). The ALJ should have followed the directions of this Court's mandate without variation. Also, the Order of the Appeals Council "remand[ed] the case to an Administrative Law Judge for further proceedings *consistent with the order of the court*." (Tr. 919) (emphasis added). Nonetheless, the ALJ conducted a new hearing instead of a supplemental hearing limited to the scope of this Court's remand Order.

"If the [Commissioner] was dissatisfied with any part of the district court's order, the remedy was to appeal the case and not, under the guise of a hearing, to relitigate a question already finally decided by the district court." *Hooper v. Heckler*, 752 F.2d 83, 88 (4th Cir. 1985). Thus, ALJ Kunz erred by conducting a new hearing and re-examining issues already decided by this Court. *Brachtel,* 132 F.3d at 419.

### Social Security Bulletin Requiring *De Novo* Review in Court Remand Cases

The Social Security Administration has a bulletin on Administrative Law Judge Decisions in Court Remand Cases. The bulletin states in pertinent part:

> If a court remands a case to the Commissioner of Social Security, and the Appeals Council subsequently remands the case to an ALJ for further proceedings and a new

decision, the Appeals Council will generally vacate the final decision of the Commissioner that the court remanded. When the Appeals Council vacates a final decision of the Commissioner, *the ALJ must consider all pertinent issues de novo.*

Hallex I-2-8-18 (emphasis added).

The ALJ presumably relied on such authority when she indicated in her decision that a *de novo* hearing was required. (Tr. 779). However, the Appeals Council informed Plaintiff's attorney that the ALJ has discretion on whether to conduct a supplemental hearing or a *de novo* hearing. (Tr. 1045). Regardless, both directives contradict this Court's specific remand Order.

Notably, the bulletin's requirement that the ALJ review all pertinent issues *de novo* is at odds with the law in the Eighth Circuit, which recognizes that the law of the case doctrine applies to administrative agencies. *Brachtel,* 132 F.3d at 419.

The Commissioner is reminded that our judicial system operates in a hierarchal fashion: "[t]he Supreme Court overrules appellate court decisions, not the other way around. The court of appeals overrules decisions of the trial court, not the other way around. And the district court overrules the Appeals Council, not the other way around." *Holst,* 637 F.Supp. at 147-48 (citations and footnotes omitted).

This bulletin effectively destroys the purpose of a specific remand order from a federal court because it requires a claimant to relitigate issues already decided. Here, the specific remand Order did not authorize the Appeals Council or the ALJ to conduct a *de novo* hearing.

### **Plaintiff is Entitled to an Award of Benefits**

This Court may affirm, modify, or reverse the Commissioner's decision with or without remand to the Commissioner for a rehearing. 42 U.S.C. § 405(g). However, the Court does not give the Commissioner "endless opportunities to get it right." *Seavey v. Barnhart,* 276 F.3d 1, 13 (1st Cir. 2001); *Miller v. Chater,* 99 F.3d 972, 978 (10th Cir. 1996).

Thus, the Court may reverse the Commissioner's decision and award DIB when the record overwhelmingly supports a finding of disability. *Cline v. Sullivan,* 939 F.2d 560, 569 (8th Cir. 1991). Here, the VE testified that competitive employment would not be possible if Plaintiff has to use a nebulizer at unscheduled times throughout the day. (Tr. 874).

Also, the Court may award DIB when "the delay involved in repeated remands has become unconscionable," *Seavey,* 276 F.3d at 13, or the agency has failed to comply with the law of the case. *Brachtel,* 132 F.3d at 419-20; *see also Wilder v. Apfel,* 153 F.3d 799, 803-04 (7th Cir. 1998) (finding that the ALJ ignored the district court's remand order which "left the case exactly where it was the last time" and was "no more reasoned than the first one.").

For example, in *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000), the Third Circuit reversed the district court's decision denying benefits and automatically awarded the claimant DIB because the case had suffered considerable delay. The court noted that "the disability determination has already taken ten years and the record is unlikely to change." *Id.* at 320.

Also, in *Wilder,* the Seventh Circuit awarded DIB to the claimant because of the "obduracy" evidenced by the Social Security Administration. *Wilder,* 153 F.3d at 804. The court found that the ALJ ignored the instructions from the district court's remand order. *Id.* Thus, "to bring the charade to an end," the court ordered the Commissioner to award the claimant DIB. *Id.* at 801.

Likewise, Plaintiff is entitled to an award of benefits because of both the unconscionable delay and the ALJ's failure to follow this Court's remand Order. Here, Plaintiff has endured ten years of litigation including three hearings before an ALJ, three petitions to the Appeals Council, and three appeals to the District Court.

The delay in this case was not caused by any deficiencies attributable to the claimant. The Social Security Administration had the opportunity to address the specific and limited issues raised by this Court, but it failed to do so.  A remand in this case would only cause further delay that is unwarranted under the circumstances.

Next, the Agency's failure to comply with this Court's remand Order is even more disturbing.  "If a district court cannot have confidence that its mandate will be observed, then it would be a disservice to the litigants and to the system to remand for further administrative proceedings. The only alternatives then available would be to affirm, or to reverse outright." *Holst*, 637 F.Supp. at 148, n.5.  The law of the case doctrine applies in this case because the District Court found that Plaintiff needs the nebulizer on an as-needed basis.  (Tr. 913-15).  The Court limited its remand Order to whether any jobs exist in such a situation and the vocational expert opined that there were none.  (Tr. 874).

Thus, the ALJ has failed to show substantial evidence for her decision to deny Plaintiff DIB.  The Court recommends that Plaintiff's case be remanded to the Commissioner for a prompt award of benefits.

### CONCLUSION AND RECOMMENDATION

Accordingly, the Court **recommends** that Plaintiff's Motion for Summary Judgment **be granted** and the Commissioner's Motion for Summary Judgment **be denied.**  The Court **recommends** that that this case be remanded to the Commissioner for **an award of benefits.**

Dated:  April 2, 2007

s/  Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2 (b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before **April 17, 2007.**